IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

In the Matter of the Personal Restraint of

LONNIE BURTON,

Petitioner.

No. 82156-3-I

ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION

On February 10, 2023, Petitioner Lonnie Burton moved for reconsideration of the opinion filed on February 6, 2023. Respondent Department of Corrections filed an answer. A majority of the panel has considered the motion pursuant to RAP 12.4 and has determined that the motion should be denied. But the panel has determined that the opinion should be withdrawn and a substitute opinion filed.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on February 6, 2023, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____ Smith, C.J.

_____ Chung, J.

_____ Brennan, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>LONNIE BURTON,<br><br>                        Petitioner. | No. 82156-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Lonnie Burton has been imprisoned since 1992 for rape, rape of a child, child molestation, sexual exploitation of a child, burglary, and robbery; he will not be released until at least 2034. Burton initiated this personal restraint petition (PRP) to challenge the Washington State Department of Corrections' (DOC) imposition of sanctions following a disciplinary action. The action resulted from prison officers' discovery that that he had a collection of images of almost entirely unclothed young men and boys—one confirmed to be underage—on his tablet. As a result of the discovery DOC also, separate from the disciplinary action, imposed a condition on Burton prohibiting his possession of visual material involving young/underaged males in any and all stages of undress.

Burton initially challenged only the disciplinary sanction. While this petition was pending, the imposed condition also became ripe to challenge and Burton did so through a supplement to his PRP. DOC recently vacated its disciplinary sanction and now contends that the issues Burton raised about the

disciplinary process are moot. We agree. In addition, we conclude that DOC had the authority to impose the new condition under statute and administrative rule, contrary to Burton's contentions that its authority was based only on the disciplinary sanction or on a recently-held-unconstitutional provision of his sentence. We therefore deny Burton's personal restraint petition.

## FACTS

### Burton's Underlying Crimes

Burton is incarcerated on two cause numbers. The first, from 1992, resulted in his conviction of second degree rape of a child, second degree child molestation, and sexual exploitation of a minor. The second, from 1993, added convictions of first degree rape, first degree robbery, and first degree burglary. Burton's crimes involved the sexual assault and rape of several underage male victims, one at gunpoint in the victim's home. He cut a hole in his apartment's bathroom door through which to view his victims, took both videos and pictures of naked boys in his bathroom and at a public shower, and video-recorded assaults. The judgment and sentence (J&S) in each cause included an appendix H setting out the conditions of any community custody he would serve after his prison sentence. Both prohibited his possession of pornographic materials. In 2010, that provision was stricken from Burton's 1993 J&S because of cases holding the term "pornography" unconstitutionally vague. At the time of the events precipitating this petition, the 1992 J&S still included the provision.

Events Leading to Discipline

Burton brought this PRP to challenge DOC's imposition of sanctions following a disciplinary hearing. Over the course of summer 2020, Burton had corresponded with a company called Public Record Press. As described in his PRP, the press provides an internet research, document, and image retrieval service for inmates. Burton's communications with the press began with him requesting images of celebrities, often specifying his desire for pictures depicting then when they were younger. His requests gradually shifted to focus on acquiring pictures of young men, aged 18-21, with "swimmers [sic] bodies," though he eventually clarified that "they don't have to be ACTUAL swimmers, but that's the body type and age I like. Sexy non-swimming scenes are cool too." Later, he requested pictures similar to some he had already received depicting young men in a bathtub and wearing "just . . . underwear" or "tight swim trunks." He repeatedly asked for images as "risqué" or "revealing" as possible without "going over the line."

He received 117 pictures. They all depict young, shirtless males. Many of the pictures show their subjects in pools, public or private bathrooms, or bathtubs. Later investigation revealed that at least one of the photos was of a minor, and that that picture had been taken from the boy's Instagram[1] account.

Prisoner access to internet sources is heavily restricted. The images Burton requested were, per DOC policy, examined by officials in the mailroom before he was permitted to access them. Some of them, as Burton knew even

---

[1] Instagram is a photo and video sharing social networking service.

while he continued to order more pictures, were rejected. But some of those rejections were overturned by the supervising sergeant.

Burton's possession of the images came to staff attention because of an incident report made by a fellow inmate. The report states that Burton approached the other man and, having never met him before, asked about his sexual orientation, asked whether he liked "little boys," and revealed that he had pictures of "little boys" on his tablet. The other inmate rejected Burton's overtures and told two witnesses about the interaction. They warned him to stay away from Burton. The incident report conveys that Burton approached the same man again a few days later and said that although the inmate had friends, "he had to know that he really was not safe." His interlocutor took that statement as a threat, potentially of rape, and reported the events to the shift commander. Following the report, prison officers searched Burton's cell and seized his tablet, finding the pictures.

The discovery led DOC to respond in several ways. First, it began a disciplinary action. Second, it instituted proceedings to impose a new restrictive condition on Burton so that he could not acquire similar pictures again. Additionally, because of the pending disciplinary action, Burton lost his job in the prison laundry.

<u>Disciplinary Action</u>

Burton received notice of the disciplinary hearing on September 21, 2020. The notice indicated two bases for DOC's action, (1) a "718" violation and (2) a "728" violation. Each of these is classified as a "serious violation" under

WAC 137-25-030. An inmate has committed a 718 violation if they use "the mail, telephone, or electronic communications in violation of any law [or] court order." WAC 137-25-030(1)(c). They have committed a 728 violation if they possess sexually explicit materials. WAC 137-25-030(1)(c). Sexually explicit materials are items "reasonably deemed to be intended for sexual gratification" that depict "nudity," which includes "exposed/visible (in whole or in part, including under or through translucent/thin materials providing intimate physical detail) genitals/genitalia." WAC 137-48-020(13).

The hearing took place on October 1, 2020. The hearing officer began by informing Burton of his rights. He then read the evidence into the record, which included (1) an infraction report detailing a selection of Burton's correspondences with Public Record Press and the investigation into Burton, (2) a search report, (3) the seized photographs, (4) several witness statements from prison officers, and (5) Burton's two J&Ss. The hearing officer also provided his impressions of many of the pictures. He noted that they depicted scantily dressed males, judged that many of the pictures' subjects appeared to be minors, or at least looked very young, and commented on a number of photographs showing "bulges" through tight clothing, one of which he characterized as an erection.

He then gave Burton an opportunity to present his own case. Burton tacitly admitted possession of the pictures. His self-defense instead focused on: (1) his lack of intent to acquire pictures of minors; (2) an argument that the pictures did not qualify as "sexually explicit" because, though they depicted the shape of genitalia outlined by clothes, the genitalia were covered; (3) an

argument that any sanction based on the conditions of his J&Ss' would be baseless because recent court decisions had concluded that restrictions on "pornography" are unconstitutionally vague; and (4) an argument that he was entitled to rely on the mailroom's screening procedures to determine whether something was contraband.

After some time, the hearing officer asked Burton to step out of the room while he paused the record. Burton says that he watched the hearing officer first speak on the phone and then write down what turned out to be his final decisions. After about 20 minutes, the hearing officer invited Burton back in and restarted the record. He disclosed that he had called Sergeant Wilkinson, the mailroom supervisor who had reversed a decision to block some of the pictures from reaching Burton. He then began to state his ruling. Burton protested that he had more argument to make and evidence to present, and the hearing officer allowed him to continue. But what followed was less a presentation of evidence or argument in any traditional sense than a meandering debate about Burton's theory of the case, and featured the hearing officer's frequent interjection and disagreement.

The hearing officer dismissed the 718 charge (using the mail in violation of the law or a court order) because of uncertainty about the pornography prohibition provisions in Burton's J&Ss. But he found Burton guilty of the 728 charge (possessing sexually explicit materials). He imposed sanctions of 10 days cell confinement and 30 days loss of computer access, but gave Burton

6

credit for time already served.  Burton appealed the decision through the prison administrative process and lost that appeal.

Imposed Condition

Even before the disciplinary hearing had been held on October 1, 2020, DOC had pursued another avenue by which to address Burton's possession of the pictures: imposing a new condition of confinement via a "classification hearing."  The relevant review process was initiated on August 27, 2020.  It was memorialized in a document called the "Custody Review Full Version."  A purpose statement dated August 27 reads: "Implementing [J&S] conditions regarding incoming graphic images via mail and JPay."[2]  (Some capitalization omitted.)  The "narrative" of the review, dated the same day, reads:

> Criteria has [sic] been developed to ensure Offender Burton's [J&S] conditions are appropriately implemented: For the purposes of complying with [the 1992 J&S's community custody pornography prohibition], pictures or depictions of minor-aged males (or males that appear to be minor-aged) in any state of undress will be considered pornographic materials in light of the current investigation being conducted by [DOC] . . . [into Burton] receiving 117 images . . . of young looking males and some underage males in various stages of undress with their genitalia visible through clothing.  Offender Burton [] sought these photos out from the sender asking for "the more risqué the better."  This seems to be a pattern of behavior for the offender and would be counterproductive to his treatment for his sexual offenses against minor aged males that cause his incarceration.  As a result, Offender Burton is prohibited from obtaining or possessing visual material involving you/underaged males in any and all stages of undress.

(Some capitalization omitted.)  It then specified that violation of the 1992 J&S

---

[2]  JPay is the secure electronics and communications system used by DOC to facilitate prisoner access to the outside world while allowing DOC review of those communications.

would result in the images' confiscation and possible disciplinary action under 718 and 728.

Burton was notified on August 27 of DOC's intent to hold the review on September 1.  Several comments in the Custody Review Final Version, dated on and after the day of the hearing, summarize the thoughts of the three individuals involved in the review: Andrew Andring, Burton's counselor; Gregory Jones, his correctional unit supervisor (CUS); and Robert Schreiber, the correctional program manager (CPM).  Andring writes that Burton had "opted to attend the FRMT meeting by signing . . . [a] Classifications Hearing Notice/Appearance Waiver."  He then restates the purpose of the review: "to implement an Imposed Condition based upon [] Burtons [sic] behavior as outlined in the above Program Narrative."  And he proposes imposing a condition on Burton that he be "prohibited from obtaining or possessing visual material involving young/underaged males in any and all stages of undress."

CUS Jones provides more detail about the then-pending investigation into Burton, and adds that Burton's possession of the images "seems to be a pattern of behavior for the offender and [allowing it] would be counterproductive to his treatment for his sexual offenses against minor aged males that caused his incarceration."  He concurs with Andring's proposed imposed condition.

CPM Schreiber's comment was made on October 8, after Burton's disciplinary hearing.  He says "Burton does currently have a J&S condition to not possess pornographic images and was in violation of that condition."  He also concurs with Andring's proposed imposed condition.

8

## History of This PRP

Burton filed this PRP on December 2, 2020. In the time between that filing and this decision, outside events, two sets of briefing, multiple motions, and orders of the court have caused the issues in front of us to shift significantly. We therefore summarize the procedural history of the case.

Burton's PRP raised five issues. First, he challenged the sufficiency of the evidence supporting the hearing officer's sanction by contending that the hearing officer had misinterpreted WAC 137-48-020(13), which defines "explicit materials." He contended that the hearing officer's decision had also been unsupported by sufficient evidence and been arbitrary and capricious because he concluded that the pictures were explicit even though other DOC officials, the mailroom staff, had previously determined otherwise. Second, Burton asserted that his due process rights were violated because he had not received sufficient notice of what might be considered "explicit." Third, he contended that the hearing officer failed to make sufficiently detailed findings. Fourth, he asserted that the hearing officer violated his due process rights when he took the testimony of Sgt. Wilkinson outside of Burton's presence and off the record. Fifth, he contended that his right to present evidence in his defense, a subset of his due process rights, was violated when the hearing officer began to issue a written decision before the close of Burton's case.

The State responded and Burton submitted a reply brief supporting his PRP.[3]  Shortly afterward, Burton also submitted a supplement to his PRP.  In it, he added a sixth issue for this panel's consideration.

Burton's new issue had only recently become ripe for review.  In February 2021, King County Superior Court removed the pornography possession prohibition from his 1992 J&S.  Unlike the removal of this provision from his 1993 J&S, the trial court replaced it with an equivalent prohibition requiring that he not possess, use, access, or view any sexually explicit or erotic material, incorporating statutory definitions.  In his supplement to his PRP, Burton connected this amendment to the DOC-imposed condition.  Burton claimed that "[t]he entire basis and authority used by [DOC] to impose[] the[] condition[] was Appendix H, Item 20 of the Judgment & Sentence in" the 1992 case.  But despite his efforts, DOC officials confronted with the changed J&S provision did not remove the condition they had imposed through the review process.  Burton exhausted his ability to appeal this decision through DOC's administrative procedures.

A December 2, 2021 order referred the PRP to this panel.  It limited the issues on review to: (1) whether the hearing officer's decision was arbitrary and capricious because it contradicted the mailroom review; (2) whether Burton's due process rights were violated by testimony taken off the record; (3) whether Burton's due process rights were violated when the hearing officer made his

---

[3] Alongside and in response to these briefs came motions by the State to seal certain attached documents—particularly the pictures at issue—and by Burton to strike some of the attached evidence, none of which is at issue here.

decision before Burton had concluded his argument; and (4) whether DOC had authority to impose the new condition on Burton after his J&S was amended. After the case was stayed while Burton unsuccessfully sought discretionary review from the Washington Supreme Court, this court called for supplemental briefing.

Burton, now represented by an attorney, filed a supplemental petition that focused on his due process arguments and did not address the imposed condition. The State's supplemental brief reported that DOC had expunged Burton's infraction and argued that this rendered moot all his issues concerning the disciplinary action. Supporting this factual assertion is the declaration of Michael Hathaway, DOC disciplinary program manager. Responding for the first time to Burton's arguments about his imposed condition, the State asserted that it was authorized for reasons other than the 1992 J&S pornography prohibition provision. And it reported that it was in the process of re-writing the imposed condition to exclude any reference to Burton's J&S.

Burton, in his supplemental reply, contended that the issues related to his disciplinary hearing are not moot because he continues to suffer the collateral impacts of the hearing. He specifically mentioned his lost job and a denial of 140 days of good time credit in October 2020 as a result of the infraction being on his record, a denial that has not yet been reversed. He also reasserted his arguments that the imposed condition was baseless, now not only because the J&S condition was altered, but also because the infraction was expunged.

Finally, for the first time, he contended that the imposed condition is unconstitutionally vague.[4]

We now turn to our analysis of the issues.

## ANALYSIS

We need reach only two of the many issues that have been raised throughout the life of this case. We conclude that DOC is correct when it argues that Burton's attacks on his disciplinary hearing are moot. We therefore do not address the due process issues he identified. We also conclude that DOC had the authority to impose the condition prohibiting Burton from possessing images of young men/boys in stages of undress. Burton's arguments to the contrary attack the authority upon which prison officials made their decision, but their authority finds its source not in the conditions of his J&S or his sanction but instead in statute and administrative code.

### Disciplinary Hearing and Mootness

We first address DOC's argument that its expungement of the disciplinary sanction moots Burton's due process arguments.

---

[4] On January 1, 2023, after he filed his supplemental reply, Burton submitted what he termed a statement of additional authorities under RAP 10.8. It does not contain citation to legal authority. Instead, it addresses an argument made by the State in its response brief that the imposed condition was justified in part because Burton had "threatened to rape" a fellow inmate. It attacks that argument through attachment of messages showing that an investigation into the matter found the accusation unsubstantiated.

RAP 10.8 does not contemplate the submission of supplemental evidence, but rather supplemental legal authority, and cannot serve as a basis for this filing. See Brewer v. Fibreboard Corp., 127 Wn.2d 512, 531, 901 P.2d 297 (1995) (document rejected in part because it was "more in the nature of a supplementation of the record" than an additional authority). Regardless, the attached documents do not impact our decision.

A case is moot if the court can no longer provide effective relief. State v. Turner, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). "The appellate court[s can] only grant relief by a personal restraint petition if other remedies which may be available to petition are inadequate under the circumstances." RAP 16.4(d). In In re Personal Restraint of Sappenfield, an analogous case, the Supreme Court considered a PRP in which DOC had been collecting restitution payments from an offender for years after its authority to do so had expired. 138 Wn.2d 588, 595, 980 P.2d 1271 (1999). The court affirmed a decision of the Court of Appeals ordering DOC to stop its collection. Sappenfield, 138 Wn.2d at 591, 595. But it declined to order DOC to return the payments it had already— improperly—collected. Sappenfield, 138 Wn.2d at 595. Sappenfield could only pursue that relief through a civil action. Sappenfield, 138 Wn.2d at 595. This was because, under the PRP rules, appellate courts "can order only the removal of the illegal restraint." Sappenfield, 138 Wn.2d at 595; see RAP 16.3 (PRP rules designed to "establish a single procedure for proceedings in the appellate court to obtain relief from restraint"). As a basic principle, then, a PRP is not the appropriate means by which to challenge the downstream consequences of an unlawful restraint, as opposed to the restraint itself.

Burton's PRP asked this court to "reverse the guilty finding on the 728 infraction, with prejudice, and order that all references to it be removed from [his] prison records and files." His supplemental petition asked that we "reverse the finding of a violation and sanction imposed." His requested relief has been granted by DOC's expungement. That he still suffers the consequences that

flowed from his infraction—namely the loss of his job and good time credit—may potentially be the subject of another action, but it is not appropriately addressed through this PRP. Much like Sappenfield, Burton must seek relief through other avenues.

We conclude that the issues Burton raised related to his disciplinary hearing are moot and we do not address them.

Imposed Condition

The issue remains of whether DOC had the authority to impose the condition prohibiting Burton's possession of images of young men/boys in states of undress. We conclude that it did.

DOC is governed in large part by ch. 72.09 RCW. The statement of legislative intent for this chapter lays out the legislature's goals for the correctional system. RCW 72.09.010. Among them are concerns for public safety, including the safety of inmates, RCW 72.09.010(1), encouraging personal responsibility and accountability and discouraging recidivism, RCW 72.09.010(3), and linking receipt or denial of privileges to responsible behavior and accomplishments, RCW 72.09.010(5)(d). The statutory scheme grants DOC the ability "to make its own rules for the proper execution of its powers." RCW 72.01.090; see RCW 72.01.010 (including DOC under this section).

DOC has promulgated a number of rules that guide its actions. DOC 390.600[5] concerns "imposed conditions." It permits DOC to "impose

---

[5] All citations are to the policy applicable at the time of Burton's imposed condition. That version of the policy is available at https://perma.cc/9VMT-ZVC6.

appropriate conditions during supervision" of offenders.  DOC 390.600 at 2.

Conditions may be imposed to "address or enforce Judgment and Sentence

conditions, safety and security issues within the prison, or community or behavior

issues."  DOC 390.600 at 3.  They may also be imposed to address issues "that

relate to the crime of the conviction [and] the offender's risk to re-offend."

DOC 390.600 at 3.

The same policy lays out the process by which conditions are imposed.

The prisoner's counselor will "[i]dentify the condition(s) to be imposed," will "[l]ist

the condition(s) and reason for the condition(s) in a Custody Facility Plan,"

provide notice to the prisoner, and forward the plan to a "Facility Risk

Management Team."  DOC 390.600 at 5.  These teams include the individual

prisoner, their assigned case manager, their CUS, and in some circumstances "a

custody/security representative."  DOC 300.380 at 5.[6]  Conditions must be

approved by the facility CPM.  DOC 390.600 at 5.

Here, Burton does not challenge whether DOC followed this rule-based

process when imposing his condition.  Nor does he challenge whether DOC

appropriately promulgated the rules themselves.  Instead, the argument he

raised in his supplement to his PRP focuses on the effect of the February 2021

King County Superior Court order.  That order amended his 1992 J&S's

unconstitutionally vague pornography prohibition.  He asserts that because the

original order was unenforceable, the order was amended only after the

---

[6] The policy can be found online at https://www.doc.wa.gov/information
/policies/files/300380.pdf [https://perma.cc/8KU2-ZK9S].

15

discipline hearing, and the 1993 order's similar provision had been entirely stricken, no J&S provision authorized any sort of imposed condition. And he contends that the now expunged disciplinary sanction likewise cannot authorize the imposed condition. He therefore asserts the condition was unauthorized.

But neither the disciplinary sanction nor either of his J&Ss provided DOC's authority to impose a condition. That authority was supplied by DOC 390.600, an administrative code promulgated under statute. Neither a J&S provision nor the disciplinary sanction was a necessary precondition for the imposition of the condition itself.

Grounds other than the sanction or Burton's J&S are included in the admittedly scant notes of the review: "[the possession of sexual images] seems to be a pattern of behavior for the offender and [it] would be counterproductive to his treatment for his sexual offenses against minor aged males that cause his incarceration." (Capitalization omitted.) This reason alone supports the condition's imposition. Burton's crimes involved creating visual recordings of his victims, young males, in bathrooms and public showers. His search for pictures recreating those settings, featuring subjects similar to his victims, is concerning, and DOC was not acting outside its authority in seeking to correct and limit this behavior.

Finally, Burton contends for the first time in his supplemental reply brief that the terms of the imposed condition—prohibiting him from "obtaining or possessing visual material involving young/underaged males in any and all stages of undress"—are unconstitutionally vague. We decline to consider this

16

argument because it was raised too late.  See RAP 10.3(c) ("A reply brief should . . . be limited to a response to the issues in the brief to which the reply brief is directed.").[7]

      We deny Burton's personal restraint petition.

                                          _Smith, C.J._

  WE CONCUR:

_Chung, J._                    _Bowman, J._

---

[7] After the completion of initial and supplemental briefing in this case, the State moved to strike Burton's vagueness argument or, in the alternative, to permit it to file a surreply.  In denying both these motions, the commissioner wrote:

> [Burton's] arguments on those matters were a proper response to the Department's claim that the petition is moot based on the Department's decision to expunge the infraction at issue and the Department's arguments regarding the validity of the newly imposed condition.

In so saying, the commissioner did not—and could not—comment on the merits of the case or decide for the panel whether Burton had properly raised a vagueness challenge.  See RAP 17.1(a) ("A person may seek relief, *other than a decision of the case on the merits*, by motion." (emphasis added)).  The commissioner's order meant only that the State's motions were denied; it left the record and briefing as it was before those motions were made.